UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY A. ARRINGTON, DENNIS J.
NAGY, DARRIN T. TUCKER, LaCRACHA
RANDAL, SONEQUA DANIELS, and DANIEL
BLUE,

        Plaintiffs,                      Case Number 10-10975
                                                   Honorable David M. Lawson

v.

MICHIGAN BELL TELEPHONE COMPANY,

        Defendant.
_____ /

## OPINION AND ORDER DENYING PLAINTIFFS' MOTIONS TO CONDITIONALLY CERTIFY COLLECTIVE ACTION

Plaintiff Wendy A. Arrington, employed by defendant Michigan Bell Telephone Company as a First Level Manager, filed this action alleging that her employer has misclassified her job as a managerial position to avoid having to pay premium overtime wages. Since the complaint was filed, five others have consented to joint the action as plaintiffs. Ms. Arrington seeks relief under the Fair Labor Standards Act (FLSA) and now asks the Court to certify the case as a collective action on behalf of other similarly-situated Michigan Bell employees. The Court heard oral argument on the motion on January 19, 2011 and now concludes that the plaintiff has not made the minimal showing required for conditional certification of the case as a collective action. Therefore, the Court will deny the motion to conditionally certify the case.

I

Plaintiff Wendy Arrington has been an employee of defendant Michigan Bell Telephone Company since 2001 and was promoted to the position of First Level Manager in the Installation and Maintenance division (I&M) in 2005. In addition to the I&M Division, the defendant also

employs First Level Managers in its Construction & Engineering and U-verse divisions. Arrington alleges that as a First Level Manager, she is at the bottom of the defendant's management hierarchy. She is responsible for supervising technicians, performing clerical duties, and relaying company policies and directives to the technicians under her supervision. She says that she does not have the authority to make employment-related decisions, set pay rates or work schedules, award promotions, discipline the technicians on her team, formulate management policies, or make any final decisions. Instead, she performs routine, standardized duties. She recounts that in one instance, she attempted to discipline a technician who had missed work and was reprimanded by her superior for failing to follow company policy or seek a supervisor's recommendation before taking action. She also is not able to purchase routine office supplies without her supervisor's approval. Arrington estimates that less than five to ten percent of her time is spent on tasks that could possibly be considered managerial.

Arrington alleges that she is paid a salary based on a 40 hour work week, but she regularly is required to work at least 50 to 60 hours per week and is assigned "duty" weeks on a rotating basis, for which she is on-call 24 hours per day for the seven-day calendar week. She states that those duty weeks can require her to work over 100 hours during that week. The defendant also assigns back-up First Level Managers for each duty week, which the plaintiff maintains makes the back-up effectively on-call for that week as well. Arrington explains that some First Level Managers receive compensated time off for part of their overtime work, but that pay is not governed by a written agreement nor payable at one-and-one-half times the hourly rate, and First Level Managers do not have the authority to choose when to use that time. The skilled technicians she supervises do get

paid overtime and she believes that many of these technicians may be compensated better than their supervisors.

Plaintiff Dennis Nagy, who filed a consent form and joined the action on October 8, 2010, presents similar facts about his employment obligations and duties as a First Level Manager in the defendant's I&M division. Nagy began working for the defendant in 1973 as a union or "craft" employee and was promoted to the position of First Level Manager in 1980, where he remained until retired on July 9, 2010. He worked 40 to 50 hours per week on a non-duty week and in excess of 80 hours per week on a duty week, when he was on-call twenty-four hours per day. For some of his time as a First Level Manager, Nagy was compensated for his overtime work, but he says that practice ceased several years ago despite no change in his job duties. Nagy describes his typical day as reviewing data provided by the crew he supervised and submitting it to his supervisors; filling out paperwork for a supervisor's review; participating in a call in which he received his daily tasks; entering data for mandatory reports to his supervisors; locating technicians for additional tasks; answering client calls and emails; answering technicians' questions from information supplied by his supervisor; and occasionally making field trips to check that the technicians had reported for a task and complied with company policies, occasionally assisting with the task itself. Nagy asserts that he does not provide guidance to technicians in the field, as that task is performed by more senior personnel. He does not formulate or interpret management policies and cannot deviate from the stated policies; he does not set work schedules for the technicians he supervises and has little to no authority to take action without obtaining the approval of a supervisor.

Both plaintiffs assert their belief that other First Level Managers suffer the same treatment and could aver to similar facts for the Court. In addition, the plaintiffs argue that the defendants have failed to maintain accurate records for the hours worked by the First Level Managers.

Arrington believes that the work she and her co-workers perform should not be considered "exempt" under the Fair Labor Standards Act. She alleges that the defendants have either willfully or negligently misclassified her position and thus have failed to compensate her for overtime wages she has accrued as a First Level Manager.

On March 10, 2010, plaintiff Wendy Arrington filed a putative collective action complaint against AT&T Teleholdings, Inc. and Michigan Bell Telephone Company. On May 14, 2010, the Court entered a stipulated order dismissing AT&T Teleholdings as a defendant. The plaintiff proposes that the Court conditionally certify the following class and allow the matter to proceed as a collective action:

> Current and former employees of defendant Michigan Bell, who are now, or were during some part or all of the last three years, employed as "First Level Managers," a/k/a Level One Managers for Defendant, with official company job titles of Manager Network Services or Manager Construction & Engineering; and who were assigned technicians with specific bargaining unit titles of: Customer Service Specialist (CSS), Service Technician, Outside Plant Technician, Communication Technician and/or Premises Technician; and who worked in excess of 40 hours per week but were not paid overtime wages.

Mot. for Cond. Cert. at 7.

The defendant vigorously opposes the motion, arguing that even if true, Arrington's and Nagy's employment experiences are isolated and do not represent the typical duties of First Level Managers. In support of that contention, the defendant has submitted its policies regarding field managers, sworn statements from eight other field managers who refute the plaintiffs' claim that all First Level Managers are subject to the allegedly illegal practices, and a survey of allegedly similarly

situated potential plaintiffs also refuting the plaintiffs' arguments that other First Level Managers are similarly situated. The defendant points out that neither Arrington nor Nagy has worked as a First Level Manager in the Construction & Engineering division or the U-verse division, nor have they submitted any evidence concerning these positions or whether they are similarly situated to the plaintiffs' position.

The defendant also provides evidence in the form of a third-party survey of 125 current and former managers who allegedly comprise a cross-section of the putative class concerning their job duties and discretionary decisions. According to the defendant, that survey demonstrates that most field managers are not constricted in their management prerogatives as alleged by Arrignton and Nagy and instead regularly exercise discretion and independent judgment in performing their day-to-day tasks. The defendant contends that the plaintiffs have not made a sufficient showing to justify conditionally certifying this case as a collective action.

## II.

The Fair Labor Standards Act states:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in . . . the preceding sentence[] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). This class-based litigation format, labeled a collective action, "serves an important remedial purpose" by allowing "a plaintiff who has suffered only small monetary harm [to] join a larger pool of similarly situated plaintiffs" in order to reduce individual litigation costs

and employ judicial resources efficiently. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 586 (6th Cir. 2009) (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Although both Federal Rule of Civil Procedure 23 and the FLSA provide a vehicle for similar plaintiffs to proceed as a group against a defendant for similar harms, the Sixth Circuit has held that the two formats are different. *O'Brien*, 575 F.3d at 584 ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA." (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The rules applicable to class actions under Federal Rule of Civil Procedure 23 present "a more stringent standard than is statutorily required" and do not apply to collective actions under the FLSA. *O'Brien*, 575 F.3d at 584-85; *see also id.* at 586 ("[I]mposing any additional restrictions from Rule 23 would be contrary to the broad remedial goals of the FLSA" (internal citations and quotation marks omitted)).

The statute sets out two requirements for collective actions: "1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer*, 454 F.3d at 546. The criteria in such cases generally are evaluated at various stages of the litigation. *Id.* at 546-47. If the plaintiff makes the minimal showing that other employees in the proposed class are similarly situated, the court will conditionally certify the case as a collective action, and then revisit that determination after additional discovery and the opt-in procedures have completed. *Ibid.* "Conditional certification is used to determine (1) the contour and size of the group of employees that may be represented in the action so as to authorize a notice to possible collective members who may want to participate, and

(2) if the members as described in the pleadings are "similarly situated.'" 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 488-89.

The FSLA does not define the term "similarly situated" for either the first or second analytical stage; the Sixth Circuit has not spoken extensively about this issue either, nor have the other circuits. *O'Brien*, 575 F.3d at 584. In *O'Brien*, the Sixth Circuit declined "to create comprehensive criteria for informing the similarly-situated analysis." *Id.* at 585. In *Comer*, the Sixth Circuit cited approvingly the idea that a "plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). Alternatively, plaintiffs may show that they were subject to a "single, FLSA-violating policy" or practice by the defendant and that "proof of that policy or of conduct in conformity with that policy [including by representative testimony] proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585; 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 489-90. In addition, the Sixth Circuit has held that plaintiffs were similarly situated where "their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585.

At this early stage, the courts generally employ "a fairly lenient standard" and may authorize notice on only "a modest factual showing." *Comer*, 454 F.3d at 547 (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000); *Pritchard*, 210 F.R.D. at 596); 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 488. In general, courts do grant conditional certification on this analysis. *Morisky*, 111 F. Supp. 2d at 497; *see also* 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 486-87 ("[I]n the

pretrial stage of FLSA cases, courts have broad discretion to grant certification, to allow discovery, and to regulate notice." (footnote omitted)). However, although that standard is lenient, conclusory allegations are insufficient to support conditional certification. 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 490-91. The lead plaintiffs bear the burden of meeting this requirement at both the initial and final certification stages. *O'Brien*, 575 F.3d at 584.

In accordance with Sixth Circuit precedent, the plaintiffs seek only conditional certification at this time. The plaintiffs cite other lawsuits filed by low-level managers against communications companies under the FLSA that have been conditionally certified as collective actions. For example, the plaintiffs refer to a case brought by a similar group of First Level Managers employed by the defendant's sister company in Connecticut in which the court granted conditional and final certification. *See Perkins v. Southern New England Tel. Co.*, 669 F. Supp. 2d 212 (D. Ct. 2009); *see also Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213 (E.D. Mich. 2010) (Edmunds, J.) (certifying a collective action against the defendant involving misclassification of certain employees); *Fisher v. Mich. Bell Telephone Co.*, 665 F. Supp. 2d 819 (E.D. Mich. 2009) (Edmunds, J.) (certifying a collective action against the defendant involving unpaid work time of customer service employees).

Those actions appear to be different from the present case in at least one important respect: they all involve significantly more individual employees than this case. For instance, *Wlotkowski* involved eleven plaintiffs and 60 opt-ins, and *Fisher* had 104 opt-ins at the time of conditional certification. Likewise, *Perkins* involved five plaintiffs and 60 opt-ins. Although numbers are not dispositive, they are indicative of the likelihood that other employees classified as the plaintiffs believe that they might be similarly-situated. If none other than the named plaintiffs assert an FLSA

violation, there is no need to employ the procedural device of a collective action to adjudicate their disputes.

The plaintiffs assert that they anticipate a class of at least 150 members. That belief, however, is supported by nothing more than the statement itself. The plaintiffs argue that they are similarly situated to other First Level Managers because they are all subject to the defendant's FLSA-violating policy of improperly classifying the First Level Managers as exempt from overtime wages under the FLSA. The plaintiffs support those allegations with declarations and depositions of the plaintiffs in which the plaintiffs assert only their "beliefs" that other First Level Managers also are subject to that practice, along with documents filed or developed in the other unrelated cases. The defendant argues that the plaintiffs have failed to show that other First Level Managers — especially those in divisions other than the I&M division — are similarly situation. The defendants attach affidavits from other First Level Managers denying that their positions should be exempted under the FLSA and asserting that they are not similarly situated to the plaintiffs with respect to the work they perform. Resp. to Mot. for Cond. Cert. at 6-8 (citing Ex. 4, decls. of Employees, decl. of Chuck Arnold ¶ 21; decl. of Diane Clark ¶¶ 12, 14, 20; decl. of Soraya Vaughn ¶ 19; decl. of John McDonald ¶ 10; decl. of Dewey Drumm ¶¶ 14, 17; decl. of Chris Holloway ¶¶ 16-17).

The Court finds that the plaintiffs have failed to meet the modest requirement that they show that other First Level Managers would be similarly-situated because they provide nothing more than conclusory allegations. The plaintiffs' claim of a common violation by the defendant would be sufficient to meet that showing, but the plaintiffs have provided no evidence of common treatment beyond the two experiences of Arrington and Nagy and their beliefs that other First Level Managers are not being compensated for overtime work. Although they include their beliefs are set forth in

signed declarations, the plaintiffs have pointed to no evidence at all that could support their argument that other First Level Managers are similarly situated.

Because the plaintiffs' showing is not sufficient to warrant conditional certification, the Court will deny the motion at this time. However, when courts deny such motions at this stage of the proceedings, the court still may permit discovery "to provide plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in." 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 495-96. That latitude is appropriate here, particularly in light of similar actions involving parallel job classifications in other courts around the country.

### III.

The Court finds that the plaintiffs have not satisfied the requirements for conditional certification of the case as a collective action. However, because additional discovery may produce evidence necessary to allow the case to proceed as a collective action, the Court will permit the plaintiffs to gather evidence and ask the Court to revisit the issue if appropriate.

Accordingly, it is **ORDERED** that the plaintiffs' motion to conditionally certify the case as a collective action [dkt. #33] is **DENIED**.

It is further **ORDERED** that counsel for the parties shall appear for a status conference on

**August 8, 2011 at 11:00 a.m.**

                                        s/David M. Lawson
                                        DAVID M. LAWSON
                                        United States District Judge

Dated:   August 1, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 1, 2011.

                            s/Deborah R. Tofil
                            DEBORAH R. TOFIL

---